O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL PEREZ,<br><br>           Plaintiff,<br>     v.<br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>           Defendant. | Case No. EDCV 10-198-OP<br><br>MEMORANDUM OPINION; ORDER |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 8, 9.)

[2] As the Court stated in its Case Management Order, the decision in this case is made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

# I.
# DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") properly found that Plaintiff can perform the jobs of mail clerk in a private company, garment sorter, and electronics worker; and
2. Whether the ALJ properly considered the treating physician's opinion.

(JS at 1-2.)

# II.
# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /
/ / /

## III.

## DISCUSSION

**A.  The ALJ's Findings.**

The ALJ found that Plaintiff has the severe impairment of HIV ("human immunodeficiency virus") infection, with diarrhea, primarily controlled with medication; sensory peripheral neuropathy, secondary to alcohol and medication; depressive and anxiety disorder; personality disorder, not otherwise specified; and alcohol dependence and abuse, in possible remission.  (AR at 12.)

When including Plaintiff's substance abuse,[3] the ALJ found Plaintiff had the RFC to perform light exertional-level work except that he could not maintain concentration, persistence and pace; complete a normal workday and workweek without interruptions from psychologically based symptoms; or respond appropriately to changes in a work setting.  (Id. at 13.)  He concluded that based on Plaintiff's impairments, including the substance use disorder, Plaintiff could not perform his past relevant work as an intake coordinator, estimator with a printing company, or sales and service.  (Id. at 13-14.)  Nor were there any other jobs available that Plaintiff could perform.  (Id. at 14.)

The ALJ also found, however, that if Plaintiff stopped his substance use, he would have the RFC to perform light exertional-level work except that he can only

---

[3]  In cases in which there is medical evidence of drug addiction or alcoholism, an ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction.  If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. sections 404.1535 or 416.935 (2010).  If the ALJ finds that the claimant is disabled and there is medical evidence of drug addiction or alcoholism, then the ALJ should proceed under sections 404.1535 or 416.935 to determine if the claimant would still be found disabled if the claimant stopped using alcohol or drugs.  20 C.F.R. §§ 404.1535, 416.935; see also Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001).

stand and/or walk four hours in an eight-hour workday, although he can sit eight hours in an eight-hour workday with normal breaks; can only occasionally stoop or bend; cannot climb ladders, ropes, or scaffolds; cannot work at heights or balance; cannot operate foot pedals or controls; cannot work with or around motorized equipment or at unprotected heights; and can only perform non-complex, non-public work, but nothing fast-paced. (Id. at 16.) He concluded that Plaintiff would not be able to perform his past relevant work. (Id. at 20.) However, relying on the testimony of the VE, the ALJ determined Plaintiff could perform the requirements of mail clerk in a private company (Dictionary of Occupational Titles ("DOT") No. 209.687-026), garment sorter (DOT No. 222.687-014), and electronics worker (DOT No. 726.687-010). (Id. at 21.)

**B.  The ALJ Properly Determined That Plaintiff Can Perform Alternative Work.**

Plaintiff argues that the ALJ improperly found that Plaintiff was capable of performing work as a mail clerk, garment sorter, and electronics worker. (JS at 3-10, 14-15.) Specifically, Plaintiff claims that these jobs are inconsistent with Plaintiff's nonexertional limitation and that each would require Plaintiff to stand and/or walk for more than four hours in an eight-hour workday, operate foot pedals, and/or expose Plaintiff to work with or around motorized equipment.[4] (Id.)

In support of his position, Plaintiff cites to the descriptions provided by the DOT definitions for each of the three jobs. He describes various work scenarios for each of the three positions where he would be required to stand and/or walk for more than four hours, operate foot pedals, or be exposed to motorized equipment. For instance, he claims that the mail clerk job would "clearly require" him to be on his feet more than four hours in an eight-hour day, as he would be "required to

---

[4] Plaintiff does not challenge the ALJ's RFC assessment, but rather only challenges the ALJ's conclusions as to Plaintiff's ability to perform the jobs at issue in light of that RFC.

4

have the mobility to continuously obtain the incoming mail to sort, date and time stamp the mail accurately as [it] comes in and examine and stamp the outgoing mail." (Id. at 5.) He claims he would "be unable to do any of these tasks unless he was walking or standing." (Id.) He also claims this position "may require" some pushing and pulling of leg-foot controls, and "would require" him to "work with or around motorized equipment such as a postmark dual motor letter opener 3060." (Id. at 5.) He also provides similarly conclusory arguments for each of the other two positions. (Id. at 6-7.)

Plaintiff's arguments for why he is unable to perform the jobs at issue fail. There is no evidence in the record to support Plaintiff's complaint that these three positions would <u>require</u> standing more than four hours a day, or that they would <u>require</u> some pushing or pulling of leg/foot controls, or that they would <u>require</u> him to work with or around the various pieces of motorized equipment he contemplates would be an integral part of each position. In fact, the DOT indicates that there are no moving mechanical parts present at any of the positions.

If Plaintiff had the RFC to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.18. However, the ALJ found Plaintiff's ability to perform all or substantially all of the requirements of the full range of light work was found to be impeded by his additional limitations. To determine the extent to which these limitations eroded the occupational base for these positions, the ALJ's hypothetical asked the VE to take them into account when determining whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (See AR at 58-59.) The VE testified that given all the limiting factors, and specifically noting that the limitations included standing or walking for only four out of eight hours (id. at 59 ("First at the range of light, the four out of eight standing, the walking . . .")), Plaintiff would be able to perform these three occupations. There is no evidence that she did not take those limitations into

account when she formulated her response to the hypothetical.  The VE further testified that her opinion was not inconsistent with the DOT.  (AR at 37-39.)

Indeed, the actual requirements of any given job is within a VE's subject-matter expertise, and she is qualified to explain how a job is compatible with a given claimant's limitations.  See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (a VE's recognized expertise provides the necessary foundation for her testimony); Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) (introduction of evidence of the characteristics of specific jobs available in the local area through the testimony of a VE is appropriate, even though the job traits may vary from the way the job title is classified in the DOT).  The VE's testimony constitutes substantial evidence supporting the ALJ's determination that Plaintiff could perform such jobs.  Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).

Plaintiff's unsupported presumptions regarding the requirements for these three positions are insufficient to call into doubt the testimony of the VE.  See Russell v. Bowen, 856 F.2d 81, 83 (9th Cir. 1988) ("Questions of credibility and resolutions of conflicts in the [VE's] testimony are addressed to the ALJ."); see also Carey v. Apfel, 230 F.3d 131, 146 (5th Cir. 2000).

Accordingly, the ALJ's reliance on the VE's testimony was proper.  Thus, there was no error.

**C.     The ALJ Properly Considered the Opinions of the Treating Physician.**

Plaintiff contends that the ALJ improperly rejected the opinions of his treating physician, Clayton O. Barbour, M.D., who completed a "Medical Opinion Re:  Ability to do Work-Related Activities (Physical)" for Plaintiff's counsel.  (AR at 730-32.)  In his "check-the-box" opinion, Dr. Barbour assessed Plaintiff's physical abilities as follows:  ability to lift and carry twenty pounds occasionally, ten pounds frequently; stand and walk two hours in an eight-hour workday; sit four hours in an eight-hour workday; sit forty-five minutes before needing to change positions; stand twenty minutes before needing to change positions; need

to walk around every fifteen minutes; need to lie down at unpredictable intervals during a work shift on a daily basis approximately once or twice a week. (Id. at 730-31.) He noted Plaintiff could occasionally twist, stoop, bend, crouch, climb stairs, and never climb ladders. (Id. at 731.) He found impairment in such functions as reaching, handling, fingering, feeling, and pushing/pulling. He determined Plaintiff should avoid concentrated exposure to extreme cold, heat, wetness, humidity, noise, and avoid moderate exposure to fumes, odors, dusts, gases, poor ventilation, and hazards such as machinery and heights. (Id. at 732.) He limited kneeling and crawling and assessed that Plaintiff's impairments or treatment would cause him to be absent from work about three times a month. (Id.)

The ALJ rejected Dr. Barbour's opinion:

> The Administrative Law Judge also does not great weight to Dr. Barbour's December 6, 2007 (Exhibit 14F) and May 11, 2009 medical source statements (Exhibit 18F). Dr. Barbour's 2007 opinion was rendered when the claimant was abusing alcohol and thus is not given any weight.
>
> Dr. Barbour opines in 2009 that the claimant can lift and carry at the light level of exertion, which does support the residual functional capacity without alcohol abuse adopted above. There is little support in the treatment record, however, for Dr. Barbour's opinion that the claimant has significant sitting, standing, walking, postural and environmental limitations. Further, Dr. Barbour's opinion is contradicted by other opinions.

(AR at 19.)

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence of record, for rejecting Dr. Barbour's opinion. This Court disagrees.

7

It is well established in the Ninth Circuit that a treating physician's opinion is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d), 416.927(d). Where the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, as appears to be the case here, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Thomas, 278 F.3d at 957 (citation and quotation omitted).

Plaintiff argues that Dr. Barbour's own records, diagnosing Plaintiff with lumbago and idiopathic peripheral neuropathy, lend substantial support to Dr. Barbour's conclusions of disability. In this case, however, while Dr. Barbour listed lumbago and idiopathic peripheral neuropathy as Plaintiff's impairments, he failed to identify any physical examination findings, lab test results, treatment findings, x-ray findings, or other objective medical findings that would support his opinion regarding Plaintiff's functional limitations as a result of these impairments. (Id. at 730-31.) As such, to the extent that the form did not contain

an explanation for Dr. Barbour's conclusions, the ALJ may properly reject the assessment. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (holding that an ALJ may reject check-off forms that do not contain an explanation of the bases of their conclusions); see also Thomas, 278 F.3d at 957 (holding that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

      Additionally, as stated by the ALJ, Dr. Barbour's treatment notes are inconsistent with his extreme conclusions regarding Plaintiff's limitations. For instance, the ALJ noted that Dr. Barbour's treatment notes "indicate that the claimant was not in acute distress . . . ." (AR at 19.) He also stated that Dr. Barbour's treatment notes dated "January 18, 2008, April 7, 2008, June 9, 2008, November 24, 2008, and February 23, 2009 . . . indicate that [Plaintiff] admitted to being in good health and denied fevers, chills, night sweats or any significant change in weight." (Id. at 20.) In fact, throughout 2008 and as late as February 2009, Dr. Barbour specifically noted that Plaintiff denied myalgia (muscle pain), joint pains and stiffness, and muscle weakness. (Id. at 702, 710, 723, 727.) At visits in January 2008, March through June 2008, August through September 2008, November 2008, and February 2009, Dr. Barbour described Plaintiff as "well-developed, well-nourished, in no acute distress." (Id. at 19-20, 695, 697, 702, 710, 720, 723, 727.) In April, June, August, September and November 2008, Plaintiff admitted to "good health" (id. at 20, 695, 702, 716, 720, 723, 727) and denied nausea, vomiting, and diarrhea (id. at 19, 399, 695, 697, 710, 716, 720, 727). Thus, the ALJ properly discounted Dr. Barbour's May 2009 opinion based on inconsistencies in his own treatment notes. See Rollins v. Massanari, 261 F.3 d 853, 856 (9th Cir. 2001) (treating physician's opinion may be discounted if treatment notes fail to present "the sort of description and recommendations one would expect to accompany a finding that [the claimant] was totally disabled").

      The ALJ also found Dr. Barbour's opinion contradicted by other medical

opinions. (AR at 19.) He credited the opinion of Samuel Landau, M.D., the medical expert who gave testimony during the hearing, and found that Plaintiff's RFC without alcohol abuse was consistent with the limitations posited by Dr. Landau. (Id. at 19.) Dr. Landau opined that based on the objective evidence, Plaintiff's impairments were well-controlled, but he could be expected to have some limitations in his ability to work, all of which the ALJ adopted. (Id. at 19, 35-38.) The ALJ also noted that Dr. Barbour's treatment notes found Plaintiff's use of alcohol to be "[o]ut of control." (Id.) He reviewed numerous treatment notes from various doctors in 2005, 2006, and 2007, which indicated Plaintiff claimed to be in good or even excellent health, denied medication problems, had less fatigue if he had a good night's sleep, and was exercising and feeling well. (Id. (citations omitted).) An ALJ may legitimately credit the testimony of a non-examining medical expert who is subject to cross-examination at the hearing.

Accordingly, the Court finds that the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, to reject Dr. Barbour's opinion. Thomas, 278 F.3d at 957; Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 19954); Magallanes, 881 F.2d at 751; Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985). Thus, there was no error.

## IV.

## ORDER

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: October 12, 2010

HONORABLE OSWALD PARADA
United States Magistrate Judge